IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD J. MILES, Jr.

                Plaintiff,                            CV-05-1611-ST

            v.                                       OPINION AND ORDER

JO ANNE B. BARNHART, Commissioner, Social
Security Administration,

                Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Ronald J. Miles, Jr. ("Miles"), brings this action pursuant to 42 USC §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act.

///

1 - OPINION AND ORDER

The parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). For the reasons that follow, the Commissioner's decision is affirmed.

**BACKGROUND**

Miles was born in mid-1967. Tr. 30.[1] He graduated from high school and took one year of computer classes at a community college about ten years later. Tr. 86, 347. On July 11, 2001, Miles filed applications for DIB and SSI, alleging disability due to low back pain following an on-the-job injury on April 3, 2001. Tr. 66-68, 199-201. Both applications were denied initially and on reconsideration. Tr. 30-36, 44-46, 202, 207. Miles requested a hearing, which was held before Administrative Law Judge ("ALJ") Joseph D. Schloss on February 26, 2003. Tr. 22-29. Miles was apparently late arriving to that hearing, which started promptly at 12:30 p.m. Tr. 24. As a result, ALJ Schloss found that Miles was not an essential witness and proceeded to take the testimony of the medical expert, Dr. William DeBolt (Tr. 25-27), and the testimony of a vocational expert ("VE"), Thomas Weiford (Tr. 27-29). The hearing concluded in seven minutes. Tr. 29. On May 2, 2003, ALJ Schloss issued a decision finding Miles not disabled within the meaning of the Social Security Act because he was capable of performing his past relevant work. Tr. 16-21. The Appeals Council denied review on July 25, 2003 (Tr. 5-8), after which Miles filed an appeal to this court (*Miles v. Barnhart*, Civil No. 03-1314-KI). Tr. 13-15, 220.

On March 15, 2004, the parties in Miles' first appeal stipulated to an Order of remand for further administrative proceedings to: (1) hold a *de novo* hearing to reevaluate Miles' residual

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer.

2 - OPINION AND ORDER

functional capacity ("RFC"), including the specific number of hours Miles can sit, stand, and walk in an eight-hour work day; (2) reevaluate step four of the sequential evaluation process; and (3) if necessary, obtain VE testimony regarding step five of the sequential evaluation process. Tr. 229-30. On December 5, 2003, Miles filed a subsequent application for DIB and SSI, alleging disability beginning June 30, 2003, due to pain in his low back, hip, and leg. Tr. 220. The claim was denied initially and on reconsideration, and a request for hearing was timely filed. *Id*. The Social Security Administration consolidated the 2001 and 2003 applications to dispose of them in a single hearing. *Id*.

On June 14, 2005, ALJ Linda R. Haack with the Social Security Administration's Office of Hearings and Appeals conducted a hearing at which Miles and another VE, Patricia Ayerza, testified. Tr. 340-83. On July 21, 2005, ALJ Haack issued a decision again finding Miles not disabled based on a step five finding that he could perform work as a small products assembler, booth cashier / ticket seller, or a surveillance system monitor. Tr. 220-28. That decision became the final order of the Commissioner on September 23, 2005, when the Appeals Council denied Miles' request for review. Tr. 210-12. Miles now seeks judicial review of the Commissioner's decision.

## **DISABILITY ANALYSIS**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of no less than 12 months[.]" 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*, 517 US 1122 (1996)

(citations omitted). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, then the claimant is not disabled. If not, then the Commissioner proceeds to step two. 20 CFR §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has one or more severe impairments. If not, then the claimant is not disabled. If the claimant has a severe impairment, then the Commissioner proceeds to step three. 20 CFR §§ 404.1520(c), 416.920(c).

At step three, the Commissioner determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 CFR Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). If so, then the claimant is disabled. If the impairment does not meet or equal one of the listed impairments, then the Commissioner proceeds to step four. 20 CFR §§ 404.1520(d), 416.920(d).

If the adjudication proceeds beyond Step Three, the Commissioner must determine the claimant's RFC. The RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by the impairments. 20 CFR §§ 404.1545(a), 416.920(e), 416.945; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the Commissioner determines whether the claimant is able to perform work he or she has done in the past. If so, then the claimant is not disabled. If the claimant

demonstrates that he or she cannot perform work done in the past, then the Commissioner proceeds to step five. 20 CFR §§ 404.1520(e), 416.920(e).

Finally, at step five, the Commissioner determines whether the claimant is able to do any other work. If not, then the claimant is disabled. If the Commissioner finds the claimant is able to do other work, then the Commissioner must show a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can do, then the claimant is not disabled. If the Commissioner does not meet this burden, then the claimant is disabled. 20 CFR §§ 404.1520(f), 404.1566, 416.920(f).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. However, at step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id.*

## HEARING TESTIMONY

### I. February 26, 2003 Hearing Before ALJ Schloss

At the hearing before ALJ Schloss, Dr. DeBolt, testified that, in his opinion, Miles did not meet any listed impairment and had no functional limitations. Tr. 25-26. Specifically, Dr. DeBolt testified that the record contained no evidence of "muscular weakness or incoordination" and that Miles' examination on September 24, 2001 was "totally normal," including "full nontender range of motion of the lumbar spine and a normal neurologic examination." *Id*.

A VE, Thomas Weiford also testified at the hearing before ALJ Schloss. VE Weiford testified that Miles' past relevant work included jobs as a: (1) cook (unskilled, light); (2) roofer (skilled, medium); (3) general laborer (semiskilled, heavy); and (4) forklift operator (semiskilled, medium). Tr. 27. ALJ Schloss asked VE Weiford whether a hypothetical individual with Miles' past relevant work could continue to perform any of that past relevant work if the individual were: (1) 34 years old with 13 years of education; (2) restricted to lifting 50 pounds occasionally and 25 pounds frequently; (3) able to sit, stand, and walk six hours in an eight hour day; and (4) had no other limitations. Tr. 28. The VE responded that the individual could still work as a cook and a forklift operator. *Id*.

## II.  June 14, 2005 Hearing Before ALJ Haack

On June 14, 2005, Linda R. Haack, an ALJ with the Social Security Administration's Office of Hearings and Appeals, conducted a hearing regarding Miles' applications. Tr. 340-83.

### A.  Miles' Testimony

On April 3, 2001, Miles was working as a general laborer digging a ditch when his "back stiffened up." Tr. 70-71, 95. After that injury, Miles sought medical care for lower back and left lower extremity pain and was released to work on May 29, 2001. Tr. 175.

From August 2002 until May 2003, Miles worked as a line cook in a restaurant, the Plum Tree. Tr. 347-50, 366, 370. He subsequently worked as a line cook in another restaurant, Club 205, from May until the end of June 2003, when he quit because he could no longer stand and do the work. Tr. 347-48, 366.

At the time of the hearing before ALJ Haack, Miles had been only sporadically seeking medical care due to a lack of funds and was living part-time with the mother of his four year old

son and with relatives, paying for food with food stamps.  Tr. 342, 346-47.  His doctor told him not to do any heavy (over 35 pounds) or overhead lifting.  Tr. 358-59.  Miles drives occasionally and does grocery shopping.  Tr 345.  He also does light housecleaning and cares for his preschool-aged son five days a week and every other weekend.  Tr. 360, 364.  On the weekends when he is not watching his son, he stays with other family members or, if they do not want company, goes camping.  Tr. 360-61, 364.

Miles is significantly overweight, but brought his weight down from 350 pounds to 240 pounds in January 2004.  Tr. 366-67.  However, when criticized by his doctor for not losing more, he gained weight back up to 300 pounds.  Tr. 367.  He cannot stand or walk for more than 20 minutes at a time and then has to lay down and do stretches or sit to relax due to pain in his back and leg, as well as in his groin from an inguinal hernia.  Tr. 355-56, 372.  He can sit for only about an hour before his back starts to spasm and he experiences a "really bad burning sensation" under his rib cage.  Tr 355, 371.  He constantly has a "really bad dull pain" in his lower back, numbness in his left leg, and a headache.  Tr. 371-72; *see also* Tr. 331 (headaches since November 2004).  Beginning in about February 2005, he began getting migraines, which increased in frequency up to a couple a week by the time of the June 2005 hearing.  Tr. 373.

### B. VE Ayerza's Testimony

At the hearing before ALJ Haack, VE Patricia Ayerza testified that Miles' past relevant work included jobs as a:  (1) custodian (unskilled, medium); (2) auto detailer (unskilled, medium); (3) service station attendant (semiskilled, medium); (4) line cook (semiskilled, light);[2]

---

[2] VE Weiford testified that Miles' "cook" position was unskilled, light work, while VE Ayerza testified that the "line cook" position was semiskilled, light work.  Tr. 27, 376.  Later, VE Weiford testified that a "general laborer" performs semiskilled, heavy work, while VE Ayerza testified that this position involved unskilled, heavy work.  Tr. 27, 376.  These differences are apparently attributable to perceived differences in the descriptions Miles gave regarding the work he performed.

7 - OPINION AND ORDER

(5) prep cook, dishwasher, and cleaner in a restaurant (unskilled, medium); (6) general laborer (unskilled, heavy); and (7) forklift operator (semiskilled, medium). Tr. 376-77. ALJ Haack then asked VE Ayerza to identify work that could be performed by a hypothetical individual who was: (1) 37 years old with a high school education; (2) restricted to lifting a maximum of 20 pounds, up to 10 pounds frequently; (3) able to sit one hour at a time for eight hours in an eight-hour work day; (4) could stand and walk six hours in an eight hour day, 15 minutes at a time; (5) restricted from bending, twisting, lifting overhead, climbing, and squating; (6) slightly limited in his ability to understand, remember, and carry out detailed instructions; and (7) moderately limited in his ability to interact with supervisors and coworkers, and to respond appropriately to work pressures. Tr. 378-79. VE Ayerza responded that all jobs except the line cook position, which as described by Miles was really a cook/kitchen helper kind of job, would be precluded. Tr. 379. However, the individual could perform work in small product assembly (DOT 739.687-030; unskilled, sedentary to light; 1,400 jobs regionally and 95,000 nationally), booth cashiering (DOT 211.462-010 and 211.467-030; unskilled, light), and surveillance system monitoring (DOT 379.367-010; unskilled, sedentary). Tr. 379-80.

## ALJ FINDINGS

At step one, ALJ Haack found that Miles had not engaged in substantial gainful activity since his alleged disability onset date. Tr. 222.

///

///

///

///

8 - OPINION AND ORDER

At step two, ALJ Haack found that Miles' mild lumbar degenerative disc disease, depression, and personality disorder are severe impairments (Tr. 222),[3] although she listed only the mild lumbar degenerative disc disease in her "Findings." Tr. 227.

At step three, ALJ Haack found that Miles' impairments did not, singly or in combination, meet or medically equal the requirements of an impairment listed in Appendix 1, Subpart P, Regulations No. 4. Tr. 222-23, 227. ALJ Haack specifically considered Listings 1.04 (disorders of the spine), 12.04 (affective disorders), and 12.08 (personality disorders), but found that Miles had failed to demonstrate the requirements of those listings. Tr. 222-23.

ALJ Haack then determined that Miles retained a RFC to perform a significant range of light work and could: (1) lift and carry 10 pounds frequently and 20 pounds ocassionally; (2) sit for up to one hour at a time for a total of eight hours; and (3) stand and walk for up to 15 minutes at a time for up to six hours. Tr. 225-28. However, she also found that Miles: (1) must not be required to climb, bend, twist, squat, or engage in overhead lifting; (2) will experience moderate difficulties in interacting with supervisors and co-workers and in responding to pressure in a normal work setting; and (3) will experience mild difficulties interacting with the general public and adapting to changes in the work place. Tr. 225, 227.

At step four, ALJ Haack found that Miles was not able to perform any of his past relevant work. Tr. 225, 227. However, at step five, relying on the testimony of VE Ayerza, ALJ Haack found that Miles could perform work as a small products assembler, a booth cashier / ticket seller, or a surveillance system monitor. Tr. 226-27.

---

[3] ALJ Haack found substance abuse a "severe" impairment (Tr. 222), but then noted that the medical record "does not establish that the claimant's substance abuse is severe." Tr. 225. She also concluded that "claimant's medically determinable substance abuse disorder is not material to the disposition of this case. Tr. 227.

9 - OPINION AND ORDER

## STANDARD OF REVIEW

District courts have the power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the case. 42 USC § 405(g). The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. *Id*.

The Commissioner's decision must be affirmed if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986) (citations omitted). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISCUSSION

Miles requests that the case be remanded to the Commissioner for further proceedings or, alternatively, for the payment of benefits. He challenges the ALJ's severity findings, RFC analysis, and finding that he could perform other work in the economy because the ALJ failed to: (1) assess and consider the testimony of his girlfriend; (2) apply SSR 02-01p in evaluating the severity of his obesity; and (3) consider all of his impairments in combination when making her

findings. For the reasons that follow, this court concludes that the ALJ's decision is supported by substantial evidence in the record and based on proper legal standards.

## I. Testimony of Miles' Girlfriend

Miles contends that the ALJ erred in failing to consider the written statements of his girlfriend, Janette Johnson. Ms. Johnson completed a form regarding Miles' activities of daily living and socialization on September 20, 2001. Tr. 131-42. In that form, Ms. Johnson stated that Miles could no longer hunt or fish (Tr. 133), could no longer drive due to hip and low back pain (Tr. 134), and could not be on the internet for "extended periods of time," but was instead limited to about 20 minutes to two hours at a time "depend[ing] on pain." Tr. 136. In her next submission, an affidavit dated July 6, 2005, Ms. Johnson stated that Miles could sit for 10-15 minutes at a time in a straight-backed chair and up to an hour in a more comfortable chair, could stand about 15 minutes, and lies down "at least once during the day for at least over an hour." Tr. 254. He does "very minimal housework," prepares only simple meals, and could "endure about 30 minutes in the car." Tr. 254-55. Although he takes care of their preschool-aged son, he "cannot rough house or play with [him] the way he would like to because of his back." Tr. 255. He could "barely manage the stairs" and has to "lean his whole body weight on the handrail" which has resulted in several broken handrails. *Id*.

Although the ALJ did not cite the information supplied by Ms. Johnson in her decision, she did incorporate the limitations reflected in Ms. Johnson's affidavits with one exception: she did not expressly find that Miles needed to lie down or nap during the work day. That omission, however, is harmless error.

11 - OPINION AND ORDER

Ms. Johnson's statements on that subject were that (in September 2001), Miles took naps "once or twice a week" during the day "for a couple of hours" (Tr. 137) and that four years later (in July 2005), he "lies down at least once during the day for at least over an hour" (Tr. 254). No explanation was given for that change in testimony. The only other information from the medical records concerning this subject is a chart note from August 2, 2001, indicating that Miles' leg pain improved after a nap (Tr. 188) and a chart note from February 19, 2005, indicating that Miles "cooks dinner every night, but may be very tired at times, needing to nap afterwards." Tr. 332. The absence of further notations about the need for naps in the medical records is noteworthy. Moreover, both Ms. Johnson's statements and the limited entries in the medical record concerning this alleged limitation are not inconsistent with resting at break times or before or after working.

Miles also testified that after sitting for about an hour, he has "to get up and walk around for like 15, 20 minutes [and] usually ha[s] to either lay down, do [his] stretches or sit if I can to relax." Tr. 356. He said nothing about taking naps or the length of time he needs to lay down. Furthermore, as discussed below, the ALJ properly rejected Miles' testimony regarding the extent of his limitations based on his activities of daily living.

Accordingly, to the extent the ALJ failed to fully credit Ms. Johnson's statements, that omission was harmless.

## II.  Failure to Consider Obesity

Miles also contends that the ALJ erred by failing to apply SSR 02-01p in evaluating his obesity. As provided in SSR 02-01p, obesity is considered a severe impairment when, alone or in combination with another medically determinable physical or mental impairment, it significantly limits an individual's physical or mental ability to do basic work activities. Although the ALJ did

12 - OPINION AND ORDER

not discuss Miles' weight in her opinion, she did question him about it in the hearing.  Tr. 366-68.

In making her decision, the ALJ considered several records from both treating physicians and

agency medical examiners.  Tr. 222, 224.

The ALJ considered the treatment notes and findings of Miles' treating physician, Dr.

John Reichle, who released Miles to full-duty work status on May 29, 2001.  Tr 175-76, 191-92,

222.  At that time, "due to the existence of pre-existing degenerative disease of the lumbar spine .

. . as well as degenerative changes," he recommended vocational rehabilitation in order for Miles

to obtain "work in the category other than heavy labor."  Tr. 191.  Miles weighed 300 pounds

then, the same amount he weighed at the time of the hearing before ALJ Haack.  Tr. 165 (MRI of

lumbar spine addressed to Dr. Reichle dated May 17, 2001), 367 (Miles' testimony before ALJ

Haack).

The ALJ also noted the findings of Dr. Thomas Rosenbaum, a neurological surgeon who

evaluated Miles on August 23, 2001.  Tr. 189-90, 222.  Dr. Rosenbaum noted Miles' "exogenous

obesity," diagnosed "[m]usculoskeletal symptoms with some left radicular component," and

recommended "conservative care."  Tr. 189-90.

Finally, the ALJ considered both the October 4, 2001 Residual Physical Functional

Capacity Assessment by Dr. Sharon Eder and the May 3, 2002 note by another agency medical

examiner affirming that assessment.  Tr. 193-97, 224.  Those examiners noted the "exogenous

obesity" found by Dr. Rosenbaum and considered the other medical evidence in the record.

Tr. 195.  However, they concluded that Miles retained the RFC to lift and carry 50 pounds

occasionally and 25 pounds frequently and could sit, stand, and walk for up to six hours in an

eight hour work day, but had no other functional or environmental limitations.  Tr. 194-96, 224.

The record reflects that the ALJ carefully considered the medical evidence available to her.  Read as a whole, the record does not establish any obesity-imposed functional limitations other than those the ALJ attributed to Miles based on his combined impairments.  Accordingly, Miles' argument concerning his obesity provides no basis for overturning the ALJ's decision.

### III. Failure to Adequately Consider Combined Impairments

Finally, Miles contends that the ALJ failed to consider the combined effect of all his severe and non-severe impairments, specifically the limitations imposed on him as a result of his lower back sciatica and radiculopathy, obesity, and left upper extremity pain, paresthesia, radiculopathy, and torticollis.  Arguing that he is more limited than found by the ALJ, Miles relies on Dr. Reichle's chart notes (Tr. 175-76), treatment notes evidencing four emergency room visits between April 27, 2000 and January 24, 2004 (Tr. 284 (April 27, 2000); Tr. 183-85, 275-77 (April 9, 2001); Tr. 180, 272-74 (July 19, 2001); Tr. 324-26 (January 24, 2004), and Dr. Rosenbaum's treatment notes dated August 23, 2001.  Tr. 190.  While those medical records do give the diagnoses cited by Miles, they do not reflect the degree of limitation he suffers as a result.  Nevertheless, Miles relies on his own testimony about the limitations that are imposed on him as a result of these conditions to bolster his contention that the ALJ improperly did not consider the combined effect of these impairments.  The difficulty with Miles' argument is that the ALJ properly rejected his testimony concerning the extent of his limitations.

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must assess the credibility of the claimant regarding the severity of symptoms.  *Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir 1996); *Cotton v. Bowen*, 799 F2d 1403, 1407-08 (9th Cir 1986).  The ALJ may discredit a claimant's testimony regarding the

14 - OPINION AND ORDER

severity of symptoms by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F3d 915, 918 (9th Cir 1993); *Smolen*, 80 F3d at 1283.

When making a credibility evaluation, the ALJ may consider objective medical evidence together with the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Smolen*, 80 F3d at 1284; *see also* SSR 96-7p. In addition, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . The ALJ must also consider the claimant's work record and the observations of treating and examining physicians and other third parties.

*Smolen*, 80 F3d at 1284 (citations omitted).

ALJ Haack found that Miles' "allegations as to the intensity, persistence and limiting effects of his symptoms are disproportionate and not supported by the objective medical findings or by any other corroborating evidence." Tr. 224. In making that determination, the ALJ relied on: (1) Miles' ability to care for two children – including one who was four years old – five days per week at home without any particular assistance; and (2) his daily activities, which included taking daily walks up to four blocks, cooking and preparing meals daily, shopping and doing light household chores, watching television for up to eight hours per day, using a computer up to two hours per day, visiting relatives occasionally, and camping on weekends, including pitching a tent and sleeping on a mat. *Id*. The ALJ found that testimony inconsistent with the evidence in the

15 - OPINION AND ORDER

medical record, expressly considering the information supplied by Miles' treating doctors, the agency medical consultants, the emergency room medical providers, and the psychological evaluation that was performed on Miles in February 2005. Tr. 224-25. Although those reports and treatment notes mention the diagnoses suggested by Miles, they do not support the severity of impairment or degree of limitation suggested by Miles on appeal. To the contrary, his own testimony about his daily activities is consistent with the limitations found by the ALJ and this court concludes that the ALJ's decision to reject Miles' assertions that his limitations prevent him from performing any kind of gainful work is supported by substantial evidence in the record. Moreover, the ALJ's findings are sufficiently specific to permit this court to conclude that she did not discredit Miles' testimony arbitrarily. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir 1995).

Miles argues that the ALJ's rejection of his assertions about the extent of his impairments, combined with her failure to consider the combined effect of all of his impairments, resulted in improper severity findings, an incorrect and unsupported RFC analysis, and an erroneous conclusion that he could perform other work in the economy. However, a searching review of the record reveals that the ALJ properly discredited Miles' assertions about his inability to work, thoroughly reviewed and generously applied the medical records in making her severity findings and conducting her RFC analysis, and properly relied on VE testimony in determining that there were other jobs Miles could perform. Her decision is based on substantial evidence and relies on proper legal standards.

///

///

## ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED.

16 - OPINION AND ORDER

DATED this 22nd day of December, 2006.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge